THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, HERMINIO MIRANDA, JUDGE, Respondent.

No. O-69-44.     Decided June 27, 1969.

*J. F. Rodríguez Rivera, Acting Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The trial judge agreed to suppress all evidence seized as a result of a search performed with a search warrant.[1] He entered the following order:

"Since it appears from the evidence offered by the defense and which was not controverted by the prosecuting attorney [the prosecuting attorney did not offer evidence] that the evidence seized upon searching defendant's house was obtained in a room of said house different from the one mentioned and indicated in the sworn statement made by agent Padilla, as well as in the search warrant, we conclude that its seizure was illegal and therefore it is appropriate to suppress same and in effect it is so ordered."

We agreed to review.

In the sworn statement which serves as basis to issue the search warrant the agent states that he has personal knowledge that Wilfredo Tapia Rodríguez k/a "El Único" keeps, possesses, and has for sale white paper wrappers tied with transparent tape and that said wrappers contain the drug known as heroin. That he carries said wrappers in a "Mustang" car, 1965 model, license plates 732-472, and

---

[1] The evidence seized is the following:

"(1) $1,203 (One thousand two hundred three dollars) United States currency; (2) a yellow envelope containing 25 decks; (3) a small envelope similar to the first one containing 22 equal decks, a package containing 186 pieces of paper or white striped wrappers, 12 yellow envelopes, one Royal Memo Book notebook, a plastic bag containing white powder; a manila envelope containing two droppers, and a bottle cap hooked with a hairpin, a plastic glass and inside the same a dropper with its hypodermic needle containing a red liquid; 2 brown paper bags containing remains of cut brown tobacco, 2 yellow plastic teaspoons; one scissors; a Colt Police Positive Special revolver, caliber 38, nickel-plated, wooden trimmed, series 868287; a 1966 graduation ring initialed CRD; a bracelet with ticket K-9; a gold bracelet with two charms; two ladies wristwatches; another ladies white gold wristwatch; three men's gold colored wristwatches; a diamond horseshoe-shaped ring; a diamond gold colored ring; 2 wedding ring sets, one white and one gold."

afterwards keeps them in a room on the left side, which is situated at the entrance of his apartment No. 108(B) of the Silva Apartments, Bolivar Street, Stop 24, Santurce, Puerto Rico, first floor.

In the search warrant the following was stated, relying on the sworn statement:

"That apartment 108(B) is located on the first floor of the Silva Apartments, Bolivar Street, Stop 24, Santurce, P.R.; that the building where these apartments are located is a two-story concrete building, was painted beige and is No. 761 of said street.

"That apartment 108(B) is adjacent on the right side to apartment No. 107. That the building where the Silva apartments are situated is adjacent on the right side to premises No. 763, on the left side to No. 759, which is a residence, on the rear to a residence, and on the front to Bolívar Street, all at Stop 24, Santurce, P.R. . . . this magistrate understands that from said statement and from the deponent's examination there is probable cause to issue this warrant, and you are therefore commanded,

in the nighttime
──────────────────────────── to make immediate search in
in the daytime or nighttime

the room at the left side of the entrance of apt. 108(B)
──────────────────────────────────────────── for the
at the Silva Apartments, Bolivar Street, Sant. P.R.

following personal property: *everything connected with the sale, use, possession, and traffic of heroin, and any others prohibited by law* and if you find the same or any part thereof, to bring it forthwith and jointly with the return of the warrant after execution before me at the District Court of Puerto Rico, San Juan Part, P.R."

On December 4, 1967 at eight in the morning the search was performed. Wilfredo Tapia and Gloria María Ortiz Centeno lived in the apartment with their 3-year-old daughter. At the left side from the entrance there are three bedrooms. The girl occupies the first. Her parents the second. The third is used to iron. The lady testified that she heard knocking at the door, but that she was in a nightgown, "I got

up, then, I went to the room where the girl was, as she was somewhat frightened. . . . Then I calmed her, then as I was still in a nightgown I went back, took a robe and put it on and I opened the door and when I opened the door, they told me 'it is the police' then, come in, I told them . . . I went into the bedroom. When I went into the bedroom she took me by an arm, I locked the door, she seemed to be nervous and I also opened the door for her, I told her 'wait until I take my dress off,' not this way, open that door for me, since I did not have, . . . so, I opened . . . I did not have any motive to keep the door closed. . . . I opened it, and when I opened it about five men came into the room, then, she said 'search her' they touched me and she withdrew a package." They searched a piece of furniture in the same room and found a revolver and some jewels. In a satchel which was in the closet they found the money. The lady admits that the decks were found in the robe she was wearing and the money, the revolver, and the jewels in the bedroom. Her contention is that the warrant issued authorized to search only the first room at the left side from the entrance.

The Constitution of Puerto Rico provides that "[n]o warrant for arrest or search and seizure shall issue except by judicial authority and only upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons to be arrested or the things to be seized."

■ The words of the Constitution are clear and precise. Their purpose is obvious. To guarantee the citizen's privacy and limit the scope of the search. It protects the person, his home, and his belongings from arbitrary seizures. It is one of the pillars on which individual liberty rests. In *Stanford* v. *Texas*, 379 U.S. 476 (1965), Mr. Justice Stewart recites the historical development of the corresponding provision in the Constitution of the United States: the Fourth Amendment, stressing its transcendency.

■ It is indispensable to describe accurately the premises, house or building to be searched. It should not be object of interpretation. The premises to be searched should be clearly specified. In the instant case it was done so. Apartment 108(B) of the Silva Apartments situate at No. 761 Bolivar Street, Stop 24, Santurce, was ordered to be searched. It is stated that it is painted beige and located on the first floor. The place to be searched can hardly be described more accurately.

■ The fact that in the search warrant it was stated to make the search in "the room at the left side of the entrance of Apt. 108(B)" should not be interpreted in the sense that the search was limited to only one room of the apartment. The apartment in question was occupied by only one family composed of Wilfredo Tapia, his mate Gloria Ortiz, and their daughter. All the apartment was in their possession and in the sworn statement of the agent who requested the search warrant reference is made to the fact that Wilfredo Tapia, after selling to him some decks that proved to be heroin, went into the apartment which he occupied at Bolivar Street and which he describes in detail. It was unnecessary to refer to a specific room of that apartment. Since it was occupied by one family only it was not fitting to limit the authorization to search it to only one room in the apartment. On the ground of probable cause authorization had been given to breach the privacy of its occupants. Once inside the apartment there was no reason to limit the search to the first room at the left side of the entrance. The sworn statement established that in apartment 108(B), occupied by Wilfredo Tapia, drugs were hidden. Considering as a whole everything expressed in the sworn statement and in the search warrant it is obvious that the search in the whole apartment was authorized. The interpretation is reasonable. See *State* v. *Aiello*, 221 A.2d 40 (N.J. 1966); *People* v. *Cruz Martínez*, 92 P.R.R. 728 (1965), and Annotation, *Search Warrant*:

*Apartment or Room,* 11 A.L.R.3d 1330 (1967) ; *Chimel* v. *California,* 395 U.S. 752, 37 L.W. 4613, decided on June 23, 1969, does not militate against our decision herein.

In view of the foregoing the order appealed from will be reversed, and the case remanded to the trial court for further proceedings.

