STATE OF NEW JERSEY, PROSECUTOR-RESPONDENT, v. DRUTLER SMITH AND HERBERT SMITH, DEFEND-ANTS-APPELLANTS.

Argued March 12, 1956—Decided March 26, 1956.

*Mr. Harry Kay* argued the cause for the appellants (*Messrs. Sanderson & Cullen,* attorneys).

*Mr. Myron W. Kronisch,* Legal Assistant Prosecutor, argued the cause for the respondent (*Mr. Charles V. Webb, Jr.,* Prosecutor of the Pleas, attorney).

The opinion of the court was delivered by

OLIPHANT, J. We certified the cause here on our own motion, *R. R.* 1:10–1(*a*). This is an appeal from the convictions of the defendants-appellants, Drutler Smith and Herbert Smith, in the Essex County Court on indictments charging them with unlawfully and knowingly having in their possession lottery slips contrary to the provisions of *N. J. S.* 2*A*:121–3, and the conviction of Herbert Smith on a companion indictment charging that he "being the owner" of certain named premises "where the business of lottery or lottery policy so called was being carried on, did knowingly *by himself* permit such building to be so used contrary to the provisions of *N. J. S.* 2*A*:121–3."

The second count of this companion indictment charged Herbert Smith "did knowingly *by his agents* permit such building to be so used" for lottery purposes contrary to

*N. J. S.* 2A:121–3. At the close of the entire case, the trial court dismissed this count of the indictment on the ground that there was no proof of agency. A motion of a co-defendant for acquittal was granted at the close of the State's case.

The defendants were arrested in a raid made jointly by state enforcement officials, State Police, prosecutor's detectives, and local police, who, armed with a search warrant, entered the premises at 22 Ninth Avenue, East Orange, New Jersey. The evidence gathered before they arrested the defendants is extensive and convincingly indicative of the purpose for which the premises were used. The State's brief consumes five pages just cataloging the evidence of the operations conducted on the premises. The police seized there 27 envelopes of lottery slips, a large amount of money, bills and coins in bags and wrappings, all cached in various places, a safe containing over $4,000, two ledger books, 14 unused lottery books, an adding machine and two cartons containing 435 new books of the type used in lotteries. During the raid the police answered incoming telephone calls and testified that the calls were inquiries relating to the winning lottery numbers "333 and 339" for the day in question.

In the face of such evidence Herbert Smith did not take the stand. The appellant's defense was that they were framed by the police, which suggests, in view of the amount of confiscated evidence, a task of considerable magnitude, that would have presented a difficult and sizeable problem to collect and transport the above materials to effectuate such a result. It hardly could have escaped neighborhood attention.

The appellant's first point relates to the applicability of *N. J. S.* 2A:121–3 (c) to the facts here. This section, *inter alia,* provides:

"Being the owner of a building or place where any business of lottery or lottery policy, so-called, is carried on knowingly, by himself or his agent, permits such premises to be so used—is guilty of a misdemeanor."

The argument is that the Legislature in this section only intended to proscribe the act of the owner, by himself or acting by his agent, from allowing others to use the building for lottery purposes and that the Legislature did not intend this section to apply where the owner used such building for himself for lottery purposes. In such case they assert *N. J. S.* 2*A* :112–3 applies and that the petit jury here convicted on proof relating to *N. J. S.* 2*A* :112–3 with a resulting material and fatal variance since the indictments here were grounded on *N. J. S.* 2*A* :121–3 (*c*).

■ Literally, *N. J. S.* 2*A* :121–3 (*c*) suggests operation by the owner's permission; but one who operates a lottery in a building "permits such premises to be so used." If he permits others to violate the law in this regard, he is equally guilty when he performs the operation himself. He is just as much responsible whether he uses it himself for such purpose or permits some one else to so use it. While the point has plausibility, it is lacking in substance.

■ Here the proofs show and the jury could have concluded that Herbert Smith, the owner of the building, permitted the building to be so used "not only by himself, but by others." The other persons were Mrs. Drutler Smith, concerning whom the evidence is ample, George Lewis, who supposedly came to visit Mrs. Smith, but who was found in possession of a lottery slip.

Finally, while what was done here may possibly seem to come within the broad phrase in *N. J. S.* 2*A* :112–3 "or for gambling in any form," that section deals with book-making and pool selling and the keeping of a place under that section has reference to pool selling or the making of book upon the running, pacing or trotting, either within or without this State, of any horses or conducts the practices as commonly known as bookmaking or pool selling. On the other hand, *N. J. S.* 2*A* :121–3 deals specifically with lotteries and lottery policy such as is indicated by the proofs here.

■ As a second point, the appellant Smith claims he was prejudiced by the amendment changing the address of the premises from 22 Ninth Avenue, Newark to 22 Ninth

Avenue, East Orange. This was obviously a typographical error which could be corrected by *R. R.* 3:4–3, 3:4–5. The first count correctly stated the address of Smith. Certainly he should know the address of his own house, he knew where he was arrested. Finally we cannot conceive how he was prejudiced since this count of the indictment was dismissed for lack of proof. The whole point is captious.

█ The appellants next charge that the indictments fail to inform them as to the nature of the offenses with which they were charged. The indictments are in the language of the statute and contain the essential elements of the crime and the State does not have to plead its evidence. *State v. Brand,* 77 *N. J. L.* 486 (*E. & A.* 1909) ; *State v. Morris,* 98 *N. J. L.* 621 (*Sup. Ct.* 1923), affirmed 99 *N. J. L.* 526 (*E. & A.* 1924) ; *State v. Jenkins,* 136 *N. J. L.* 112 (*Sup. Ct.* 1947), dismissed 137 *N. J. L.* 209 (*E. & A.* 1948).

If the defendants were in doubt as to the details of the crime charged they could have requested a bill of particulars. *R. R.* 3:4–6. They did not do this for the obvious reasons that they knew precisely what the charges against them were and what evidence would be offered to sustain it. We wonder why counsel could hope that we could think otherwise.

█ The appellants next complain that the prosecutor in his summation to the jury transgressed the elements of fair play and advocacy as delineated and defined by the decisions of this court. We have examined the challenged remarks in the context of the entire summation by the Prosecutor and find no such transgression of the principles set forth in *State v. D'Ippolito,* 19 *N. J.* 540, 549 (1955), and the cases cited. We did not intimate there and we do not countenance the suggestion here that the prosecutor within these defined limits cannot forcefully and forthrightly evaluate and characterize with vigar the evidence admitted in the case in his summation to the jury. Such is his duty. Anything less would impose a difficult burden on the State with the resulting advantage to a criminal defendant.

█ We must point out that in a criminal case as distinguished from a civil case the State, as a party, can make no motion for a new trial nor appeal from a verdict of

acquittal regardless of how flagrantly such verdict may be against the weight of the evidence.

Among other remarks made by the prosecutor the appellants specifically complain that the prosecutor referred to Mrs. Smith's income tax returns and said if he had them he would have offered them in evidence. Mrs. Smith had flatly testified that the prosecutor's office had withheld evidence and her counsel in summation referred to her missing income tax returns and by innuendo inferred that they were suppressed. The prosecutor was simply answering the suggestion that counsel had tried to implant in the jury's mind that he had withheld these returns from the evidence for purposes of his own. This was proper comment.

The next point is that the Legislature may not subdivide an offense and that *N. J. S.* 2*A*:121–3(*b*) is void for vagueness and a delegation of legislative power, "without a sufficient basic standard." The point made is that *N. J. S.* 2*A*:170–18 classifies the possession of lottery slips, books or records pertaining to a lottery as mere disorderly conduct and therefore repealed *N. J. S.* 2*A*:121–3(*b*) by implication. They argue that under *N. J. S.* 2*A*:121–3(*b*) there must be proof of a "criminal intent," while under *N. J. S.* 2*A*:170–18 there must be "proof of intent to possess"; and since they both deal with the same offense modified as to degree as to requisite proof, the result is that "unlawful possession" is split into two separate and distinct offenses and this cannot be done.

This argument was effectively disposed of in *State v. Labato*, 7 *N. J.* 137 (1951). These statutes deal with different degrees of the same offense: one is criminal and the other is disorderly conduct. The conscious intent "to possess" and the evil intent necessary for the criminal offense, are substantially different. The offenses are not accumulatively punishable and there is protection against double jeopardy. The further argument that the statute is vague is absolutely without merit. It specifically enumerates the articles, possession of which will be an offense against the statute. *Beam v. Kent*, 3 *N. J.* 210 (1949) and *State v. Winne*, 12 *N. J.* 152 (1953) are not in point.

Appellant further complains of certain rulings as to the admission of testimony and alleged errors in the charge of the court. It is well settled in this State that a police officer is competent to testify as an expert on the question whether certain papers found when a defendant was arrested are policy or lottery slips or relate to policy or lottery. Based on sufficient experience on the police force he is qualified to so testify since an expert may be qualified by study without practice or practice without study, but a mere observation without either is insufficient. The officers in this case were properly qualified to so testify. *State v. Arthur*, 70 *N. J. L.* 425 (*Sup. Ct.* 1904). Likewise the evidence concerning telephone conversations which took place between the police officers and callers on the telephone lines on the premises in question during the raid were properly admitted into evidence. *State v. O'Donnell*, 8 *N. J. Super.* 13, 16 (*App. Div.* 1950) ; *State v. Carrano*, 27 *N. J. Super.* 382, 388 (*App. Div.* 1953).

Appellants also argue that a certain portion of the charge was contradictory and that the jury should not be allowed to speculate as to what constitutes the applicable principle of law. *State v. Wynn*, 21 *N. J.* 264. But in the instant case the trial court recalled the jury saying "that section of my charge is expressly withdrawn and I direct the jury to disregard it." He then re-charged this phase of the law correctly. This procedure is the correct procedure and once having been followed the principle relating to contradictory charges does not apply.

We have examined the other points raised by the appellants and they are without merit as is his final point that the verdict was against the weight of the evidence. In view of the evidence in this case the mere statement of that proposition demonstrates that it is frivolous.

The judgment of the Essex County Court is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.