91 N.J. Super. 457 (1966)
221 A.2d 40
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN J. AIELLO AND VINCENT GIULIANO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1966.
Decided June 16, 1966.
*461 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Joseph S. Accardi argued the cause for appellant John J. Aiello.
Mr. Norman Fischbein argued the cause for appellant Vincent Giuliano (Mr. Joseph S. Accardi, of counsel).
Mr. Barry H. Evenchick, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
The opinion of the court was delivered by KILKENNY, J.A.D.
A jury in the Essex County Court found defendant Aiello guilty of knowingly permitting a building or premises owned by him to be used for the carrying on of the business of lottery or lottery policy, so called, in violation of N.J.S. 2A:121-3 (c). He was sentenced to State Prison for a term of not less than two nor more than three years. He appeals from the judgment of conviction.
Defendant Giuliano, who was also indicted with Aiello for violating N.J.S. 2A:121-3(c) and charged in a separate indictment with the illegal possession of lottery slips, N.J.S. 2A:121-3 (b), was found guilty of both charges by the jury in the consolidated trial of both defendants. Giuliano was similarly *462 sentenced to a prison term of two to three years for violation of N.J.S. 2A:121-3 (c) and received a suspended sentence for violation of the illegal possession charge. N.J.S. 2A:121-3 (b). He also appeals.
Both appeals were consolidated for oral argument. However, resolution of the Giuliano appeal can be readily resolved without recourse to other questions raised by Aiello. Hence, we dispose of Giuliano's case first.

I. AS TO GIULIANO

A.
At oral argument Giuliano's attorney announced that this defendant abandoned his appeal from the judgment of conviction based upon the illegal possession of lottery slips, N.J.S. 2A:121-3(b). Indeed, there was ample evidence before the jury to support its finding of guilt on that charge. Accordingly, that judgment of conviction is affirmed.

B.
While the point was not raised below or in the briefs on appeal, we questioned the validity of Giuliano's conviction for violating N.J.S. 2A:121-3(c), in the light of a trial record which showed that Aiello, and not Giuliano, was admittedly the owner of the premises, 187 Fourth Street, Newark, wherein the business of lottery was allegedly carried on. We gave the prosecutor and Giuliano's attorney additional time to brief the point and this has been done.
N.J.S. 2A:121-3(c) provides:
"Any person who

* * * * * * * *
c. Being the owner of a building or place where any business of lottery or lottery policy, so-called, is carried on knowingly, by himself or his agent, permits such premises to be so used  (Emphasis added)
Is guilty of a misdemeanor." *463 One of the essentials of this crime is "ownership" of the building. Giuliano was not an owner of the building where the lottery was allegedly carried on. He could not, therefore, be legally convicted of a violation of N.J.S. 2A:121-3 (c).
The State cites State v. Low, 18 N.J. 179 (1955), in which a statute penalizing misappropriation of funds from an owner of realty was held broad enough to include misappropriation from a contract vendee. The case is not in point as it does not involve a statute identifying the criminal as the owner. Nor are we concerned with cases cited by the State wherein the statute involved defines "owner" in terms broad enough to include an agent.
It is also argued by the State that this conviction can be sustained on the theory that Giuliano was an aider and abettor of Aiello. We think not. The State cites no case wherein a non-owner was held liable as an abettor of the owner where the statute made ownership a condition of criminal liability. One charged with a crime is entitled to require the State to make strict proof of each statutory element of the crime charged.
Accordingly, Giuliano's conviction for violating N.J.S. 2A:121-3(c) is reversed and set aside.

II. AS TO AIELLO
Aiello's first contention is that his motion for judgment of acquittal at the end of the State's case should have been granted. He relies heavily upon the argument that the indictment charged that Giuliano was "his agent" and the proofs do not support a finding of any such agency.
The indictment charged that:
"* * * John J. Aiello, being the owner of premises known as No. 187 Fourth Street, in the City of Newark, aforesaid and Vincent Guiliano, his agent, did then and there knowingly and unlawfully permit the business of lottery or lottery policy so-called to be carried on in said premises * * *." (Emphasis added)
*464 We do not regard that indictment, so conjunctively worded, as requiring an acquittal of Aiello, if the State failed to prove that Giuliano was his agent. N.J.S. 2A:121-3(c) makes an owner of premises criminally responsible, if the business of lottery is carried on in the premises to the knowledge of the owner, "by himself or his agent." (Emphasis added.) A jury could reasonably find from the evidence herein that defendant Aiello knew "by himself," and without regard to Giuliano's also knowing the fact, that the premises were being used to carry on the business of lottery, and that Aiello permitted the premises to be so used. Hence, proof that Giuliano was Aiello's agent was not essential to conviction.
Aiello's next point, which is really a corollary of his first contention, supra, is that the trial court erred when it charged the jury that Aiello could be found guilty if he himself permitted the premises to be used for the business of lottery. The trial judge told the jury that the statute applies to the case "where the owner used the building himself for lottery purposes since one who operates a lottery in his own building permits such premises to be so used within the meaning of the statute." This instruction represents a correct statement of the law. The language is taken almost verbatim from State v. Smith, 21 N.J. 326, 331 (1956).
The gist of defendant's argument under this point is that the indictment charged Aiello with responsibility for the act of Giuliano, as his agent, and this precluded his being found guilty if the act or knowledge were his own. Reliance is placed upon State v. Smith, supra. But Smith is distinguishable. There Smith was charged under two separate indictments with violating N.J.S. 2A:121-3(c). The first alleged that Smith himself knowingly permitted the premises to be used for lottery purposes; the second charged that Smith by his agents knowingly permitted the premises to be so used. At the close of the proofs, the trial court dismissed the indictment which charged Smith with responsibility solely for the acts of his agents on the ground that there was no proof of *465 agency. But the conviction of Smith for what he himself knew and had done was affirmed on appeal. The indictment in the instant case does not limit Aiello's responsibility to what was done "by his agent" but charges him conjunctively with violating the law himself. The conjunctive "and" in the joint indictment in this case, as opposed to the preposition "by" in the separate indictment against the owner alone in Smith, distinguishes that case from this. Thus, the jury might have found no agency relationship and still properly have convicted Aiello. The instruction correctly made that possibility clear and was, therefore, not erroneous.
Aiello's next claim of error is that his joint trial with Giuliano, to which he had objected, prejudicially affected his right to a fair trial. The gist of his argument is that the evidence of Giuliano's unlawful possession of lottery slips, admissible under the separate indictment against Giuliano alone, was totally unrelated to the charge against him. He reasons that it was impossible for the jury to isolate the evidence of the one offense from the other and that constant reference by the court and the prosecutor to the incriminating evidence found in Giuliano's possession away from the premises resulted in the evidence in the one case being carried over to his prejudice to the other case being tried at the same time.
We recognize that in a joint trial, such as this, as in almost every joint trial, there is a potential of prejudice. The evidence against one defendant alone may possibly have an adverse impact against the other joint defendant. The same is true when multiple charges against one defendant are tried at the same time. State v. Manney, 26 N.J. 362 (1958). But that case points out that "if separate offenses were required to be tried separately in all circumstances, the multiplicity of trials would disserve the State and defendants alike" (at p. 366). It also laid down the rule:
"* * * a mere possibility of such harm is not enough to bar joinder or consolidation; if it were, nothing would remain of the rule. The question is whether a jury is likely to be unable to comply with *466 the trial court's instructions. Of necessity, a wide range of discretion must repose in the trial judge. * * *" (at p. 368)
See also State v. Coleman, 46 N.J. 16 (1965), for the broad rule that, in the interests of economy and efficiency, similar or related offenses may be joined for single trial so long as defendant's right to fair trial remains unprejudiced. Also cf. R.R. 3:4-7, 3:4-8 and 3:5-6.
There was good reason to try both defendants and both indictments herein at the same time. Each case involved the same witnesses. The offenses involved an alleged relationship between the co-defendants. There was a concomitance of circumstances whereby the arrest of Giuliano with his brown paper bag containing lottery slips was immediately followed by a search of the Aiello building, pursuant to a search warrant, wherein other similar bags of lottery slips were discovered. Thus, the brown paper bag in Giuliano's possession was relatively insignificant compared with the great quantity of such bags found in the building along with the other physical evidences of the conduct of a lottery business therein.
Moreover, the trial court clearly instructed the jury as follows:
"Now, as you know, you are trying two separate and distinct cases. You are trying two defendants each of whom are charged with a separate crime with a separate and distinct indictment. * * * You have two separate and distinct cases before you. Now, the fact that you are trying two separate and distinct indictments, you must not let that circumstance mislead you in your considerations of the guilt or innocence of these defendants. The case of each defendant stands on its own bottom, which is to say, that each one of these defendants deserves your separate consideration in connection with your determination of his guilt or innocence of the crime charged against each one."
This cautionary instruction reduced to de minimis the possibility of prejudice to defendant Aiello resulting from a joint trial. We find no mistaken exercise of discretion by the trial judge in permitting the joint trial under the facts and circumstances herein.
*467 Aiello maintains that the search warrant was defective because it and the affidavit upon which it was based did not describe the place to be searched with sufficient particularity to satisfy the requirements of the Fourth Amendment. A pretrial motion to suppress the evidence seized by the police during the search under the warrant had been denied by the trial court.
The affidavit supporting the issuance of the search warrant referred to the premises as 187 No. 4th Street, Newark and described it as "a one-family dwelling," listed in the names of John and Geraldine Aiello. The search warrant referred in its preamble to the premises as a "private dwelling," and its authorizing part allowed any law enforcement officer to enter 187 No. 4th Street, Newark and search for the lottery paraphernalia. The police authorities had the premises under surveillance for over two months and had seen Giuliano enter on 23 occasions with his brown paper bag. There was a single front entrance and the police believed the premises to be a one-family residence. There was only one phone subscriber and no evidence that the premises were other than a private dwelling occupied by Aiello and his wife.
When the search was made, the police found no incriminating evidence on the first floor where the Aiellos resided. On the second floor there were some chairs, a pool table, a bathroom, a kitchen, but no other furniture. There was no evidence of any occupancy by any other family. Proceeding to the third floor, the police observed a table, two adding machines, a dresser with rolls of tape and small pads, and a closet type room with a number of brown paper bags in it. The bags contained thousands of dollars of policy slips. Here, too, there was no evidence of occupancy by any other family. In fact, therefore, the building was resided in only by the Aiellos.
This case is different from State v. Ratushny, 82 N.J. Super. 499 (App. Div. 1964), where the police knew that the premises were occupied by more than one family and had no reason to believe that incriminating or illegal objects *468 might be found in more than one apartment. In such a situation a designation of the particular apartment to be searched is ordinarily required. Where, however, as here, such information is not known and the outward appearance of the house, in conjunction with what the police knew about Giuliano's access to the house, furnished no basis for a reasonable belief that incriminating or illegal objects would be found in only a specific identifiable portion of the interior of the building, particularization of such a portion in the warrant is not necessary. As stated in State v. Romeo, 43 N.J. 188, 206, "The fundamental requirement of the Fourth Amendment is reasonableness." See, too, State v. Daniels, 46 N.J. 428 (1966), where it is held that accuracy in the description in every detail is not required. Certainly, the police, having watched this building for months and observing no occupancy by any family other than the Aiellos and Giuliano's periodic visits, acted reasonably in describing the premises as a private one-family dwelling.
Accordingly, we find no valid basis for a reversal on this ground.
We find no substantial merit in Aiello's contention that the articles seized by the police were not within the goods described in the warrant and were "merely evidentiary materials." The warrant authorized a search for: "Slips, moneys, papers, records, memoranda, sheets and paraphernalia used in connection with the crime of lottery." The items seized came within that description. As to a search for and seizure of evidence of guilt, the rule in our State is that such a search and seizure are permissible. R.R. 3:2A-2(c); State v. Bisaccia, 45 N.J. 504, 518-519 (1965).
Defendant's final claim of error is that the trial court allowed evidence not admitted during the trial to enter the jury room during the jury's deliberation. The reference is to a car coat belonging to Aiello which was taken into the jury room along with certain cartons containing other evidence.
The car coat was in one of the cartons. The cartons and the contents were received in evidence. Defendant made no specific *469 objection to the car coat's being included. The car coat was thus in evidence. Accordingly, there is no basis for defendant's present contention that evidence entered the jury room which had not been admitted during the trial.
The judgment of conviction as to Aiello is affirmed.
As noted above, the judgment of conviction as to Giuliano is affirmed as to the indictment charging unlawful possession of lottery slips, N.J.S. 2A:121-3(b), but Giuliano's conviction of a violation of N.J.S. 2A:121-3(c) is reversed.