**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3436-19

ROGER C. GATES and
LORRAINE GATES,
his wife,

 Plaintiffs-Respondents,

v.

COUNTY OF PASSAIC,

 Defendant-Appellant.

_____

Argued November 29, 2021 – Decided December 8, 2021

Before Judges Fasciale and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2925-17.

Donald A. Klein argued the cause for appellant (Weiner Law Group, LLP, attorneys; Jay V. Surgent, of counsel; Donald A. Klein, Andrew J. Kyreakakis, and Howard E. Brechner, on the briefs).

Jeffrey M. Patti argued the cause for respondent (Patti & Patti, Esqs., attorneys; Jeffrey M. Patti, of counsel and on the brief).

PER CURIAM

Defendant County of Passaic (the County) appeals from an August 30, 2019 order denying its summary judgment motion; a March 17, 2020 judgment in favor of plaintiffs entered after a jury trial; and a March 27, 2020 order denying its motions for judgment notwithstanding the verdict (JNOV) and for a new trial.

On appeal, the County argues:

> POINT I[1]
>
> THE [MOTION JUDGE] ERRED IN DENYING THE COUNTY'S MOTION FOR SUMMARY JUDGMENT.
>
> > A. The County Is Immune From Liability For Discretionary Activities Under N.J.S.A. 59:2-3(d).
> >
> > B. Plaintiffs Cannot Satisfy The Prerequisites For Public Entity Liability Under N.J.S.A. 59:4-2.
> >
> > > 1. Oak Ridge Road was not "a dangerous condition" at the time of the accident.

---

[1] To comport with our style conventions, we have altered the capitalization of the County's point headings, but have omitted these alterations for readability.

2. The County did not create or have notice of an alleged dangerous condition.

3. The County's conduct was not palpably unreasonable.

POINT II

THE TRIAL [JUDGE] ERRED IN QUALIFYING [MICHAEL] MURPHY AS AN EXPERT, IN NOT STRIKING HIS TESTIMONY IN ITS ENTIRETY AS A NET OPINION, AND IN FAILING TO CURE HIS IMPROPER AND PREJUDICIAL TESTIMONY.

A. Murphy Was Improvidently Qualified As An Expert.

B. Murphy's Testimony Was Merely A Net Opinion And Should Have Been Stricken In Its Entirety.

C. The Trial [Judge's] "Curative" Instruction To The Jury Was Not Only Insufficient, It Was Also Impossible To Implement.

POINT III

THE TRIAL [JUDGE] ERRED IN BARRING THE COUNTY FROM PRESENTING EVIDENCE OF ITS "RESOURCES" IMMUNITY AT TRIAL AND INSTRUCTING THE JURY THAT IT SHOULD NOT BE CONSIDERED.

POINT IV

THE EVIDENCE AT TRIAL CONFIRMED THAT THE COUNTY WAS NOT LIABLE UNDER N.J.S.A.

3

59:4-2; AND THE TRIAL [JUDGE] ERRONEOUSLY EXCLUDED RELEVANT EVIDENCE REGARDING THE COUNTY'S IMMUNITY WHICH FURTHER DEMONSTRATED THAT THE COUNTY WAS NOT LIABLE UNDER THIS STATUTE.

POINT V

THE TRIAL [JUDGE] ERRED IN BARRING THE COUNTY FROM PRESENTING EVIDENCE OF "DESIGN" IMMUNITY AT TRIAL.

POINT VI

THE TRIAL [JUDGE] ABUSED HIS DISCRETION IN PERMITTING TESTIMONY BY PLAINTIFFS' WITNESSES CONTRARY TO THE COURT RULES.

POINT VII

THE TRIAL [JUDGE] ERRED IN FAILING TO CURE EGREGIOUS PREJUDICAL STATEMENTS BY PLAINTIFFS' COUNSEL IN HIS SUMMATION.

A. The Trial [Judge] Permitted Plaintiffs To Equate The Standard For Liability Under The Tort Claims Act With Information On The County's Website.

B. The Trial [Judge's] Deficient Response To Improper Remarks By Plaintiffs' Counsel In His Summation Regarding The County's Resources Significantly Compounded Other Errors.

POINT VIII

FUELED BY ERRONEOUS EVIDENTIARY RULINGS, THE JURY'S FAILURE TO FIND

4

[PLAINTIFF] TO BE COMPARATIVELY NEGLIGENT TO ANY DEGREE WAS DEMONSTRABLY AGAINST THE WEIGHT OF THE EVIDENCE.

POINT IX

THE INDIVIDUAL AND CUMMULATIVE EFFECT OF THE TRIAL [JUDGE'S] ERRORS WARRANTS REVERSAL OF THE JURY VERDICT AND JUDGMENT.

POINT X

THE TRIAL [JUDGE] ERRED IN DENYING THE COUNTY'S POST-VERDICT MOTIONS.

We affirm all orders under review.

I.

The County was not entitled to summary judgment. We review a ruling on a motion for summary judgment de novo and apply the same standard as the motion judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). We consider, as the motion judge did, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). A judge grants summary judgment "if the pleadings, depositions, answers to interrogatories and

A-3436-19

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To defeat a motion for summary judgment, the opponent must '"come forward with evidence" that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). We owe no special deference to the motion judge's legal analysis. Templo Fuente De Vida Corp., 224 N.J. at 199. On such dispositive motions, we must look at the facts in the light most favorable to the non-moving party, here, plaintiffs.

On April 14, 2016, plaintiff Roger C. Gates lost control of his motorcycle after its front wheel struck a large pothole on Oak Ridge Road. Plaintiff was not exceeding the speed limit of forty miles per hour. Although plaintiff attempted to navigate this road, which had been filled with recurrent pothole problems due to the road's state of disrepair, pavement irregularities, and multiple potholes, plaintiff's motorcycle crossed the road into oncoming traffic, struck a minivan, and his body went flying.

Paul Janiec, a Passaic County Road Department district supervisor, explained that the road department had a road crew of approximately fourteen

members and two inspectors. He explained that the peak of the pothole season was around February and March when there was a lot of freezing at night and warming during the day. He stated that in April each year, on an as-needed basis, the crew would therefore fill potholes. In the first half of 2016, Janiec would inspect Oak Ridge Road once every two weeks, and an inspector in his district did the same thing. Janiec admitted that in April 2016, there was a "rough patch" of several potholes on Oak Ridge Road at the intersection of Cooper Road, less than a mile south of where the accident occurred, which were filled "on a regular basis." Janiec understood Oak Ridge Road had persistent potholes. He knew of no pothole policy other than fixing the "ones [that] need the most attention first."

Kenneth Simpson, Supervisor of the Passaic County Road Department, knew that since 2014, there was a "recurring [pothole] problem" on Oak Ridge Road in the vicinity of Wallace Cross Road, directly north of where the accident occurred. Importantly, and implicitly characterizing the substantial dangerous condition, Simpson said that during the time of year when the accident occurred, there could be "thousands of potholes in one particular week." In addition, "[d]uring this time frame," potholes in the same location could be filled on a recurring basis. Acknowledging that repair work was unsuccessful, he

explained that the road crew "could literally go there in the morning and fill the pothole. And by the time they're coming back, the pothole is out." Simpson stated that Oak Ridge Road was a candidate for resurfacing in April 2016, based on several factors, including the last time it had been resurfaced and the condition of the road, but despite their persistent problems, road resurfacing was not done until April 2018.

A resident (the resident), who lived near the scene of the accident, confirmed that on the day of the accident there were two potholes near the middle of the northbound lane on Oak Ridge Road in front of her house. She estimated that the potholes were three feet long and up to a foot deep. She observed vehicles swerving to avoid the potholes. She notified the Township of the presence of potholes starting in 2014.

Plaintiffs' liability engineering expert, Steven Schorr, concluded that the northbound lane of Oak Ridge Road, approaching the area where the accident occurred, was in "poor condition, including pavement irregularities and potholes," and that this "poor roadway condition" was a significant contributing factor to the accident. After Schorr passed away, his engineering firm submitted a report prepared by Robert Lynch, a licensed professional engineer, who also concluded that the "poor condition" of Oak Ridge Road approaching the curve

8

"presented difficulties" for plaintiff as he approached and navigated the curve. He opined that the potholes caused plaintiff to lose control of the motorcycle and that the "poor roadway conditions" were a significant contributory factor to the accident.

We reject the County's arguments that it was immune from liability under N.J.S.A. 59:2-3(d) and that its conduct was not palpably unreasonable under N.J.S.A. 59:4-2. Here, N.J.S.A. 59:2-3(d) does not apply because the County did not engage in high-level policy-making discretionary decisions; rather, the County made operational decisions. And under N.J.S.A. 59:4-2, a jury was required to resolve whether the County's repeated unsuccessful road work was palpably unreasonable.

A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity. N.J.S.A. 59:2-3(a). Specifically, a public entity is

> not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a [judge] concludes that the determination of the public entity was palpably unreasonable. Nothing in this section shall exonerate a public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial functions.

[N.J.S.A. 59:2-3(d).]

Subsection (d) creates immunity when, faced with competing demands, the public entity exercises its discretion on whether and how to apply its existing resources. Brown v. Brown, 86 N.J. 565, 577 (1981). A policy decision made at the planning level, and not (like here) the operational level, as to whether to resurface a road is immune from liability under N.J.S.A. 59:2-3(d). Costa v. Josey, 83 N.J. 49, 59-60 (1980).

These discretionary determinations include decisions such as what roads should be repaired, whether to repair the road by patching or resurfacing, and whether to use the available resources for the maintenance of the road. Id. at 55. Immunity under subsection (d) protects only "basic policy determinations." Ibid. Once resources have been provided, a public entity may be liable for its determination of priorities in the application of such resources if that determination is palpably unreasonable. Margolis & Novack, Claims Against Public Entities, 1972 Task Force Comment on N.J.S.A. 59:2-3(d) (2021). The palpably unreasonableness standard of care in N.J.S.A. 59:2-3(d) overlaps with the palpably unreasonable standard in N.J.S.A. 59:4-2. Brown, 86 N.J. at 579-80.

A-3436-19

Here, resurfacing the roadway and the funds available for road repairs, which are high-level planning decisions, are not at issue. Rather, the repair of potholes at the operational level of decision-making is the focus of plaintiffs' claims. Therefore, immunity under N.J.S.A. 59:2-3(d) is inapplicable to the facts of this case.

Liability for a dangerous condition of public property is set forth in N.J.S.A. 59:4-2:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

A-3436-19

N.J.S.A. 59:4-3 provides:

> a. A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b. A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

The Tort Claims Act (TCA) defines a "dangerous condition" as a "condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a).

As to dangerous condition, the resident, who lived directly adjacent to the scene of the accident, stated there were numerous potholes in the road in front of her house, including ones that were multiple feet long and "maybe [five] inches, maybe deeper I don't know but I know they were bad." She regularly saw people swerve to avoid potholes, and when vehicles could not, the resident described the noise as "bah bump bah bump." The resident's daughter said the potholes were "deep" and "pretty long." A local department of public works

12

supervisor emailed Simpson (on the night of the accident), stating that the potholes that put plaintiff out of control, near the accident, were "good-sized ones."

As to notice, the County knew for years that the accident area had been problematic with recurring potholes, at least since 2014. Simpson, the resident, and the resident's daughter established that fact. Eventually, the County put the road on a resurfacing list, but not until after the accident. Discovery revealed that the County's road crew and supervisors themselves knew of the dangerous, continued problems that persisted. At a minimum, whether the pothole situation and the roadway constituted a dangerous condition was for the jury to determine as the fact finder.

And as to palpably unreasonable, plaintiffs produced sufficient evidence for the jury, not a judge, to resolve. The pothole problem persisted, during the time of year when the accident occurred, there could be "thousands of potholes in one particular week," the resident made multiple reports about the condition of the roadway in the area of the accident, and although he admitted that the area required pothole repairs, Janiec confirmed such repairs were unsupported by work records.

13

II.

The County contends that the trial judge abused his discretion by qualifying Murphy as an expert in traffic operations and maintenance, that his entire testimony should have been stricken as a net opinion, and that the judge's limiting instruction as to the use of the testimony was insufficient.

The decision to admit or exclude expert testimony is reviewed for abuse of discretion. Townsend v. Pierre, 221 N.J. 36, 52-53 (2015). "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." N.J.R.E. 702. In order to be admissible as expert testimony, the witness must have sufficient expertise to offer the intended testimony. Thompson v. Merrell Dow Pharm., Inc., 229 N.J. Super. 230, 240 (App. Div. 1988). An expert witness must possess the minimal technical training and knowledge essential to a meaningful and reliable opinion. Hake v. Manchester Twp., 98 N.J. 302, 314 (1985).

The judge properly admitted Murphy as an expert. Indeed, the County conceded that Murphy had the requisite work experience. Murphy was retired from the Pennsylvania Department of Transportation after over forty years of

14

service, where he had been a county maintenance manager and an equipment operator who had filled potholes, and had experience in roadway drainage systems, maintenance, and repair. Murphy had a couple of years of college, which included coursework in pothole patching. He also had previously been admitted as an expert in different courts, and at the time of trial, he worked for a traffic planning and design company preparing reports.

Merely because Murphy did not have an engineering degree and did not inspect the accident scene does not disqualify him to testify as an expert, as the County suggests. An expert may be qualified by study without practice or practice without study. State v. Smith, 21 N.J. 326, 334 (1956). Expertise may be acquired by occupational experience. Correa v. Maggiore, 196 N.J. Super. 273, 282 (App. Div. 1984). "Our case law is replete with examples of the generous approach taken by our courts when qualifying experts based on training and experience." State v. Jenewicz, 193 N.J. 440, 454 (2008). Murphy had over forty years of experience in road maintenance, including pothole repair, and had repaired potholes himself. His occupational experience qualified him as an expert.

The County maintains that Murphy offered net opinions. The net opinion rule provides that "an expert's bare conclusions, unsupported by factual

15

evidence," are inadmissible.  <u>Buckelew v. Grossbard</u>, 87 N.J. 512, 524 (1981).

The County raised this on two separate occasions.

At the close of plaintiffs' case, the County moved to strike Murphy's testimony in its entirety.  The judge granted the motion in part, finding that the minimal questioning regarding whether the County should have done permanent patching prior to the accident was "based on nothing, no standard, and he's not qualified to say that."  Therefore, "any of the opinions that say what should have been done are out."  The judge added that there were "not that many places where he did that."

At the close of its case, the County renewed its motion to strike the entirety of Murphy's testimony.  The judge denied the motion again but stated that he would "fashion an instruction for the jury . . . to explain that portions of his testimony are being stricken from the record and shouldn't be considered by them."  The judge instructed the jury:

> After the testimony was completed, I ruled that portions of Mr. Murphy's opinions were not admissible in this case.  I found that he lacks expertise, or a sufficient basis, for reaching some of his conclusions.
>
> Specifically, I am striking any testimony . . . regarding any opinions he holds as to what the County should have done to repair the road because he's not qualified to render such opinions.  You are not to

16

consider those opinions in reaching your decision in this case.

Any opinions that he rendered regarding road maintenance techniques, types of repairs, the methodology of such repairs, and the necessary equipment to perform such repairs are valid opinions within his field of expertise and are admissible in this trial.

Given our standard of review, we see no error as to the judge's evidentiary rulings, let alone an abuse of discretion. As to what the County "should have done," we note that the jury learned about alternative methods of road repair from the County's expert, John Desch, who identified four methods for repairing the road. Of course, Desch was subject to cross-examination. Thus, even if there was an evidentiary error, which is not the case under the facts here, it was harmless.

## III.

In the County's Points III and IV, the County maintains that the trial judge erred in excluding evidence relating to resource immunity at trial and in instructing the jury that such a defense should not be considered. N.J.S.A. 59:2-3(d) creates immunity when, faced with competing demands, a public entity exercises its discretion on whether and how to apply its existing resources. As we previously pointed out, the County was not entitled to the resource immunity

defense, in part, because whether the County should have repaved Oak Ridge Road prior to the accident was not at issue.

IV.

In Point V, the County contends that the judge erred by precluding it from presenting a design immunity defense merely because plaintiffs decided to drop their claim that there was a design defect. We conclude the County is barred by the doctrine of invited error from arguing on appeal that the judge erred in excluding evidence of design immunity. Plaintiffs withdrew their claim for design defect before trial, and the County proceeded to inform the judge that it agreed with the judge that withdrawal of the claim mooted its design immunity defense.

Plan or design immunity under N.J.S.A. 59:4-6 provides:

> Neither the public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of public property, either in its original construction or any improvement thereto, where such plan or design has been approved in advance of the construction or improvement by the Legislature or the governing body of a public entity or some other body or a public employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved.

18

To avail itself of the immunity under N.J.S.A. 59:4-6, the public entity "must demonstrate that the specific design or plan detail alleged to constitute the dangerous condition was itself the subject of prior approval or prior approved standards." Weiss v. N.J. Transit, 128 N.J. 376, 384 (1992). In determining whether a public entity has design immunity, judges first identify the culpable cause of the accident and then ask whether that identified cause is one the Legislature intended to immunize. Kain v. Gloucester City, 436 N.J. Super. 466, 473 (App. Div. 2014); see also Manna v. State, 129 N.J. 341, 358-59 (1992) (explaining that "a plaintiff cannot cast a design improvement as a 'maintenance' action to circumvent the immunity given the original design").

In its answer, the County pleaded "each and every . . . immunity provided under the" TCA. At a pre-trial hearing, the County claimed that Desch's report raised a plan or design immunity defense. It further argued that it was raising the defense in response to Murphy's report, which included a section drafted by another professional engineer, Gerald Baker, referring to storm drainage and a lack of catch basins as being a cause of the accident. Plaintiffs argued that Murphy was just being thorough and that what they were claiming were maintenance issues, not design. The County maintained that the jury should still be permitted to consider the defense. The trial judge responded that because

plaintiffs were "not moving forward" with the claim, the report claiming design or plan defect was "not . . . go[ing] in . . . why would we let the jury hear that there's an immunity for design defect?" Counsel for the County responded, "All right . . . [t]hat makes sense . . . I can't raise a defense for an argument that's not being made."

The design or plan immunity is an affirmative defense as to which the public entity bears the burden of pleading as well as proof. Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 90 N.J. 582, 600 (1982); see also Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 111 (1996) (explaining that a public entity did not meet its burden of establishing design or plan immunity for its drainage system because, although it pled the defense in its answer, it had not presented any evidence about its initial decision to establish the drainage system).

The County is barred from raising design immunity because it invited the error by agreeing with the judge's conclusion that it could not raise a defense to an argument that was not being made. "A party who consents to, acquiesces in, or encourages an error cannot use that error as the basis for an objection on appeal." Spedick v. Murphy, 266 N.J. Super. 573, 593 (App. Div. 1993). In Spedick, from the colloquy between the trial judge and the attorneys, it appeared

that the plaintiff "essentially agreed" to permit certain testimony. <u>Id.</u> at 592. We concluded that the plaintiff was barred from challenging the admission of the testimony on appeal. <u>Id.</u> at 593.

The County also argues that the judge should have allowed it to introduce Baker's portion of the report as an adoptive admission under N.J.R.E. 803(b)(2), which provides that "a statement whose content the party-opponent has adopted by word or conduct or in whose truth the party-opponent has manifested belief" is admissible. The County cites plaintiffs' attorney's cover letter to the report stating that plaintiff "hereby amends answers to interrogatories to include the enclosed narrative report," and that Murphy and Baker had been previously named as experts who would testify as to the County's road maintenance practices.

Admission of such a statement requires that the party-opponent be aware of it, understand the content of the statement, and unambiguously assent to it. <u>McDevitt v. Bill Good Builders, Inc.</u>, 175 N.J. 519, 529-30 (2003). The County failed to offer evidence that plaintiffs were aware, understood, or unambiguously assented to the conclusions in Baker's report. Unlike an answer to an interrogatory, an expert report "is not a statement of a party and therefore

cannot be treated as admission simply because a party furnished it in discovery." Skibinski v. Smith, 206 N.J. Super. 349, 353 (App. Div. 1985).

The County cites Sallo v. Sabatino, 146 N.J. Super. 416, 418-19 (App. Div. 1976), where we held that a statement made in an answer to interrogatories in a prior litigation, referring to a physician's report, was admissible as an adoptive admission. The physician's report concluded that the plaintiff was totally disabled. Id. at 418. This court found "[i]n submitting the report in support of their claims in the previous lawsuit plaintiffs were presumably manifesting their adoption of it and their belief in its truth." Ibid. But that case involved a medical report describing the extent of the plaintiff's injuries, so to the extent that the Sallo court was correct, the nature and specificity of the report differed from the report in this case.

Finally, we reject the County's claim that the report was admissible under judicial estoppel. Plaintiffs never changed positions before the trial judge on the validity or substance of the report. Judicial estoppel bars a party from successfully arguing a position before a judge and then subsequently assuming a contrary position. Newell v. Hudson, 376 N.J. Super. 29, 38 (App. Div. 2005). Nor was the evidence admissible because plaintiffs "opened the door" to it, as claimed by the County, since design immunity was ruled out of the case. Nor

was it admissible because it was not privileged, as the County claims, citing

Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 302 (2006), and In re Pelvic

Mesh/Gynecare Litig., 426 N.J. Super. 167, 182-83 (App. Div. 2012).  Here, the

question was the evidence's relevance in light of whether design immunity was

at issue.

V.

In Point VI, the County argues that the trial judge erred in permitting the

resident's de bene esse deposition testimony to be read into evidence at trial

rather than having her testify and that the judge's curative instruction did not

eliminate the prejudicial nature of her testimony.  In addition, the County asserts

that the judge abused his discretion in permitting Christopher Gates (plaintiffs'

son) and Lorraine to testify because they had not been listed as witnesses in the

pre-trial discovery.  We see no error by permitting the resident to testify by

deposition and Christopher and Lorraine to testify.

In pertinent part, Rule 4:16-1(c) provides that a deposition of a witness

may be used at trial against another party

> who was present or represented at the taking of the
> deposition or who had reasonable notice thereof if the
> [judge] finds that the appearance of the witness cannot
> be obtained because of death or other inability to
> testify, such as age, illness, infirmity or imprisonment,
> or is out of this state . . . .  The deposition of an absent

but not unavailable witness may also be used if, upon application and notice, the [judge] finds that such exceptional circumstances exist as to make such use desirable in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court.

A trial judge's decision to admit or exclude evidence, including a deposition, is entitled to deference absent a showing of an abuse of discretion, namely, a clear error of judgment resulting in a manifest denial of justice. Rowe v. Bell & Gossett Co., 239 N.J. 531, 551-52 (2019). Here, the resident was unable to testify due to an illness.

The deposition was played for the jury, during which the County objected that the video was not properly edited in accordance with the trial judge's prior rulings after the resident testified that if a motorcycle had hit the potholes in front of her house it would be "bad" and would "cause damage." The judge sustained the objection and gave a curative instruction with the County's consent and without objection:

> As I stated from the outset at some points during the course of the case, I would be making rulings on admissibility of certain things. And in this case my ruling was that [the resident] was not competent to testify about what would or would not cause damage to a vehicle or anything else.
>
> So, for that reason the testimony where she said that it would cause damage I am excluding, and you

should not consider it in your deliberations in this case whatsoever.

Whether a curative instruction was adequate is entitled to deference, and will result in reversal only for abuse of discretion. State v. Kueny, 411 N.J. Super. 392, 403 (App. Div. 2010). Moreover, it can be assumed that the jury followed the judge's admonition. See State v. Manley, 54 N.J. 259, 271 (1969). The County did not object to the adequacy of the curative instruction below, and instead, counsel told the judge, "I would want that. Generally[,] I would not, but I think I would want that in this case."

Prior to trial, the County moved to bar Christopher from testifying because neither he nor Lorraine were listed in the interrogatories as persons with knowledge of the case's particulars. Plaintiffs argued that neither witness was a surprise because Christopher's name had been listed in their first pre-trial submission, and Lorraine's deposition had already been taken. The judge ruled that he would permit Christopher to testify as to his observations of the accident scene the day after the accident.

A trial judge's determination of whether to exclude testimony based on a discovery violation is reviewed for abuse of discretion. Bender v. Adelson, 187 N.J. 411, 428 (2006). Factors that would strongly urge a judge to suspend the imposition of such a sanction include the absence of a design to mislead, the

absence of surprise, and the absence of prejudice if the testimony is admitted. Wymbs v. Twp. of Wayne, 163 N.J. 523, 544 (2000).

Testimony by one of the plaintiffs, Lorraine, could hardly have been a surprise to the County. Moreover, she was listed as a witness to be called at trial by plaintiffs in their pre-trial exchange of information pursuant to Rule 4:25-7(b) that was submitted six to seven weeks prior to trial. Nor is there any evidence that plaintiffs sought to mislead the County as to the fact that she would be called as a witness. Finally, her testimony that there were a few potholes about four or five inches deep and two to three feet in length the day after the accident was merely cumulative. Therefore, the County cannot be said to have been prejudiced by the testimony.

As for Christopher, his testimony that his observations the day after the accident that the road conditions in the area of the accident were poor, and that there was one long pothole that was quite deep, was also cumulative. Nor does the County offer any evidence that plaintiffs sought to mislead by not including his name in the answer to interrogatories. Finally, as with Lorraine, there was no surprise as Christopher's name was listed in the pre-trial exchange of information submitted some six weeks prior to trial.

## VI.

In Point VII, the County contends that the trial judge erred in failing to cure prejudicial statements made by plaintiffs' counsel in summation. Specifically, the County points to counsel's remark citing the County's mission statement on its website regarding making roads safe for all travelers. It argues that the mission statement was not introduced into evidence and that the judge refused to so instruct the jury. The County also argues that the judge's curative instruction, after counsel's remark that the County could have performed permanent patching even though the judge had barred evidence regarding resource immunity, was flawed because the instruction did not cite the judge's preclusion of that defense.

During summation, plaintiffs' counsel told the jury as to the question of whether the roadway constituted a dangerous condition:

> [T]he Passaic County road system's . . . own mission statement on their website [states] . . . the services and programs carried out by the [County] are to provide for the safe passage of both motorists and pedestrians while using County roads. And . . . you've got to ask yourself, did they meet their own standard in this case?

At the end of the summation, counsel added:

> [I]n sum, remember Passaic County's own mission statement[:] Making those roads safe for all travelers. And you decide whether being reactive is enough, or

27

should they have been proactive and been out there and knowing this condition is recurring . . . and it's not getting fixed[.] . . . [A]nd you have to decide for yourselves whether or not that is good enough because . . . but for the fact that they did not carry out their mission statement, we wouldn't be here today.

The County objected to these remarks because counsel sounded as though he was "almost trying to suggest [the mission statement was] the law." The judge stated, "I don't think he was suggesting that it was the law. I think it's fine." The County did not request a curative instruction.

In general, attorneys are afforded "broad latitude" in closing arguments. Bender, 187 N.J. at 431. However, such comments should be restrained and "not 'misstate the evidence nor distort the factual picture.'" Ibid. (quoting Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999)). When they transgress the boundaries of that broad latitude, a new trial must be granted if the "comments are so prejudicial that 'it clearly and convincingly appears that there was a miscarriage of justice under the law.'" Ibid. (quoting R. 4:49-1(a)). A trial judge's determination as to whether the remarks were unduly prejudicial is reviewed for abuse of discretion. Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 392-93 (2009).

Counsel in summation "may draw conclusions even if the inferences that the jury is asked to make are improbable, perhaps illogical, erroneous or even

28

absurd, unless they are couched in language transcending the bounds of legitimate argument, or there are no grounds for them in the evidence." Spedick, 266 N.J. Super. at 590-91. Plaintiffs do not dispute that the County's mission statement was not part of the record. Reference to it was improper; however, making roads safe for all travelers is essentially a truism. It is difficult to conclude that such a remark was so prejudicial as to constitute a miscarriage of justice under the law.

In addition, the County objected to the portion of the second paragraph in which counsel discussed whether the County was proactive enough in knowing about the condition of the roadway and in repairing it. The County maintained that the remark was improper because there was no expert testimony that the County was insufficiently proactive. The judge stated that he believed the remark was a "fair comment on the evidence in the case" and not unduly prejudicial. However, the judge added that he believed the comment was wrong as a matter of fact because the testimony was that the County personnel would drive around checking the roads and would fill potholes upon discovery. The comment would not appear to be a legitimate, if incorrect, inference from the evidence because there was no evidence that the County was not "proactive" in searching for potholes. However, the remark was not unduly prejudicial because

29

counsel qualified the assertion by stating that it was up to the jury to determine whether the County's actions were "good enough." This was a legitimate consideration for the jury in determining whether the County was palpably unreasonable under N.J.S.A. 59:4-2. "To be palpably unreasonable, it must be action or inaction that is plainly and obviously without reason or reasonable basis, capricious, arbitrary or outrageous." Johnson v. Essex Cnty., 223 N.J. Super. 239, 257 (Law Div. 1987).

The County also challenges the following statement plaintiffs' counsel made in summation: "[Y]ou heard Mr. Desch say, rather forcefully, they don't do permanent patching. They contract that out. Therefore, it can be done. And it could have been done." The County objected because counsel was "raising a resource argument" and asked for a curative instruction. The judge agreed to such an instruction and initially decided, after summation had been completed, to include a sentence in the instruction noting that the County had been precluded from raising a resource allocation immunity defense. After plaintiffs objected, the judge agreed to take out this portion of the instruction over the County's continuing objection. In his general charge to the jury, the judge told them:

> The information from John Desch about contracting out
> for permanent patching can be considered by you only

to demonstrate a method to do the patch. The jury cannot consider that information for the purpose of determining that the County should have hired an outside contractor to do this work.

The County claims that by taking out the sentence about the resource immunity defense, the jury was left with the question of why the County did not contract out the repairs, thereby exacerbating the prejudice. However, the judge alleviated that possibility by instructing the jury that they could not use the evidence to conclude that the County should have hired an outside contractor. It is assumed that the jury would faithfully follow the judge's admonition. See Manley, 54 N.J. at 271.

## VII.

In Point VIII, the County argues that the trial judge erred in excluding plaintiff's driving record and his lack of insurance, and that this error led the jury to its finding that plaintiff was not comparatively negligent. The County claims that the driving record was admissible as habit evidence and that, in any event, it was admissible to impeach plaintiff's deposition testimony, wherein he stated that he could not recall being involved in any other motor vehicle accidents.

According to plaintiff's driving abstract, he had numerous violations from 1972 to 2012. Prior to trial, the judge ruled that this record would not be admissible under N.J.R.E. 404 because of undue prejudice. The judge stated:

> How do you get those things in, because essentially what you're doing is what [N.J.R.E.] 404 says you can't do. Character evidence, evidence of a person's character or character trait, including a trait of care or skill or lack thereof is not admissible for the purpose of proving that person acted in conformity therewith on a particular occasion. There's two exceptions, this doesn't fall into [either] one of the two exceptions.

Under N.J.R.E. 406:

> (a) Evidence, whether corroborated or not, of habit or routine practice is admissible to prove that on a specific occasion a person or organization acted in conformity with the habit or routine practice.

> (b) Evidence of specific instances of conduct is admissible to prove habit or routine practice if evidence of a sufficient number of such instances is offered to support a finding of such habit or routine practice.

"[A] mere tendency to act in a particular manner does not constitute" a habit. L.T. v. F.M., 438 N.J. Super. 76, 90 (App. Div. 2014). For an action to rise to the level of a habit, it must be repeated behavioral response to a specific factual stimulus. Sharpe v. Bestop, Inc., 158 N.J. 329, 330 (1999). "[B]efore a [judge] may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere

32

'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Id. at 331 (first alteration in original) (quoting Thompson v. Boggs, 33 F.3d 847, 854 (7th Cir. 1994)).

In State v. Bogus, 223 N.J. Super. 409, 427-29 (App. Div. 1988), the trial judge admitted an abstract of the defendant's driving record as habit evidence where the defendant was charged with vehicular aggravated manslaughter. We concluded the judge erred because the violations contained in the abstract were not indicative of a regular response to a repeated situation. Id. at 428-29. We distinguished between general evidence of careless driving to show how someone drove on a particular occasion, which was inadmissible, and evidence that an individual repeatedly drove carelessly on a particular part of a particular road, which was admissible. Ibid.

Here, the evidence in question did not relate to plaintiff's driving on Oak Ridge Road, but other violations and a lack of insurance. Thus, it lacked the particularity or specificity required to be admissible as habit evidence. Therefore, the judge did not abuse his discretion in not admitting the evidence.

The County also argues that it was improperly precluded from impeaching plaintiff as to his driving record. However, the record establishes that it was given a limited opportunity to impeach on that issue. Christopher testified that

he was surprised to learn that plaintiff did not have registration or insurance on the day of the accident. In addition, plaintiff testified that in October 2015, he fell off a motorcycle and broke his clavicle when he was forced to make an evasive move to avoid a vehicle coming at him. On cross-examination, the County asked plaintiff whether he considered himself to be a law-abiding motorcycle driver. Plaintiff responded that he tried to be. The County then referred to plaintiff's deposition in which he stated that he could not recall whether he had had any prior vehicle accidents. Plaintiff then claimed that he did not consider his fall off a motorcycle in October 2015 to be a motor vehicle accident. Rather, he considered it an evasive move to avoid a vehicle that was coming straight at him.

## VIII.

In Point IX, the County maintains that the cumulative effect of the trial errors deprived it of a fair trial. Where legal errors, in the aggregate, are of such a magnitude as to render the trial unfair, the prejudiced party will be entitled to a new trial. State v. Orecchio, 16 N.J. 125, 129 (1954). The aggrieved party carries the heavy burden of showing the injustice clearly and convincingly. Pellicer v. St. Barnabas Hosp., 200 N.J. 22, 52 (2009). The County has not met this burden.

IX.

In Point X, the County argues that the court erred in denying its post-trial motions for a new trial or JNOV because plaintiffs did not establish a prima facie case under N.J.S.A. 59:4-2, the verdict was against the weight of the evidence, and the judge's legal rulings resulted in severe prejudice to the County.

In denying the County's post-trial motions, the trial judge stated:

> [W]here the [d]efense case fell apart . . . was when your expert testified that the County had all they needed to be able to do a semi-permanent patch, because now what they had before them was testimony of virtually . . . all of the witnesses on the issue of patching . . . . I think they all agreed that the semi-permanent patch . . . is the more permanent method.
>
> We left out from the jury's consideration about repaving. So the sole issue in this case was whether or not it was palpably unreasonable for the County to fill the pothole as they had been doing in this case . . . .
>
>    . . . .
>
> The jury was instructed on what it means to be palpably unreasonable, and they decided that in this case it was palpably unreasonable for . . . [d]efendant to just continue to do what it was doing.
>
> [A]ny errors that may have been made, and perhaps there were some in terms of what testimony should have been allowed, maybe some was limited more so that should have been . . . .

> However, I think it's harmless error when you have a defense . . . expert witness who says the County had all it needed to do a better job patching.

In reviewing a trial judge's denial of a motion for JNOV, an appellate court "must accept as true all the evidence which supports the party defending against the motion," according that party "the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied." Lanzet v. Greenberg, 126 N.J. 168, 174 (1991) (quoting Pressler, Current N.J. Court Rules, cmt. on R. 4:40-2 (1991)).  In reviewing a trial judge's denial of a motion for a new trial because the verdict was against the weight of the evidence, the reviewing court may overturn the trial judge's determination if it clearly appears that there was a miscarriage of justice under the law, giving deference to the trial judge's feel of the case and ability to assess witness credibility. Id. at 175.

However, when a motion for JNOV raises a question of law, the reviewing court will review it de novo. Royster v. N.J. State Police, 227 N.J. 482, 493 (2017).  The trial judge's interpretation of the law and the legal consequences that flow from the established facts are not entitled to any special deference. Raspa v. Off. of the Sheriff of Gloucester Cnty., 191 N.J. 323, 334-35 (2006).

A-3436-19

We conclude any remaining contentions by the County is without sufficient merit to warrant attention in a written decision. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3436-19